J-A23045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FRAUNFELTER | : | |
| | : | |
| Appellant | : | No. 120 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 5, 2023
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000677-2022

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED: SEPTEMBER 30, 2025**

I agree with my esteemed colleagues that the trial court erroneously increased the grading of multiple offenses based upon the jury finding that the child sexual abuse materials ("CSAM") in question depicted indecent contact, and therefore this matter must ultimately be remanded for resentencing. However, unlike the Majority, I believe there was sufficient evidence adduced at trial for the jurors to find Appellant guilty of dissemination of photographs, videotapes, computer depictions and films, in violation of 18 Pa.C.S. § 6312(c). As such, I would affirm Appellant's convictions at counts 3, 5, 6, 8, 10, 11, and 13.

The Majority aptly summarizes the background of this matter, so I need not do so at length here. I restate only the following salient points. Appellant created his Gmail account, fraunfelter88@gmail.com, in March of 2021. This

email address was associated with his Samsung Galaxy S21 smart phone. In October of that same year, Appellant established an account on the social media platform, Kik, with a username of "felter88," utilizing that same email address to register the account. Kik allows members to chat in particularized groups and share various media, including pictures and videos. The Commonwealth's allegations in this case were that in November and December, Appellant received CSAM from other Kik users and transferred some of those files both to himself and to third parties within the app. He did this with his cell phone, using his home wi-fi and the wireless internet provided by Verizon, his mobile carrier.

It was in January of 2022 that Kik submitted the cybertip in question to the appropriate authority. At this time, Kik also would have shut down Appellant's account. *See* N.T. Trial, 5/4/23, at 120-21. The tip ultimately made its way to Pennsylvania State Police Trooper James Ballentyne, who began his investigation by sending subpoenas to various entities, including Kik and Google. While executing a search warrant, the trooper seized Appellant's Samsung Galaxy S22, which Appellant had received in exchange for his older S21 model only several weeks before and shortly after the Kik account was closed. The new phone was linked to the same Gmail address Appellant previously used to register with Kik.

At trial, the jury reviewed the CSAM associated with each charge. Notably, the Commonwealth introduced evidence showing the exact dates and times that Appellant received those files, whether he transferred them, and to

- 2 -

whom. With respect to the counts alleging a violation of § 6312(c), the trial court correctly instructed the jurors that Appellant need not have actually distributed CSAM to another person to be guilty. Rather, the jury could convict him if he possessed the files while having the intent to transfer. Appellant was found guilty on all counts.

Appellant's first issue on appeal challenges the trial court's decision to allow Trooper Ballentyne to testify generally about indicators of deception exhibited by people during interviews. I deem sound the Majority's determination that any such error in this regard was harmless, and therefore do not discuss it further.

Next, Appellant attacks the sufficiency of the evidence supporting his convictions as to counts 3, 5, 6, 8, 10, 11, and 13, all of which relate to dissemination of CSAM or possessing it with the purpose of dissemination. I begin by reiterating the principles pertinent to the sufficiency challenges:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.
>
> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Roberts*, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up). Additionally, "we consider all of the evidence actually admitted at trial and do not review a diminished record." *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa.Super. 2011) (citation omitted).

Our Crimes Code defines the pertinent crime as follows:

Any person who knowingly sells, distributes, delivers, disseminates, transfers, displays or exhibits to others, **or who possesses for the purpose of sale, distribution, delivery, dissemination, transfer, display or exhibition to others**, any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of [eighteen] years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S. § 6312(c) (effective August 30, 2021 to December 29, 2024) (emphasis added). As can be seen, the offense does not require actual transfer and instead criminalizes possession of CSAM if there is a demonstrated purpose of transferring to others. In that regard, this crime is akin to the statute that penalizes possession of controlled substances with the intent to deliver. *See* 35 P.S. § 780-113(a)(30).

In vacating the convictions in question, the Majority finds that "there was no evidence that Appellant possessed the images in counts 3, 5, 6, 8, 10, 11, and 13 for the purposes of distribution, such as file sharing software or other method of distribution on Appellant's device(s)." Majority Memorandum at 17. I respectfully disagree. The evidence plainly bore out that Appellant used his Samsung Galaxy S21 cellular phone to create a Kik account to both receive and transfer CSAM. Although Appellant no longer had that phone by

the time Trooper Ballentyne executed the search warrant, Appellant by his own admission created the Kik account and participated on the picture trading social media platform.

Thus, not only did Appellant have a method of distribution on his phone during the relevant period, namely the Kik application, but he in fact did transfer a number of the explicit files to other individuals using that software. The fact that the Commonwealth could not locate Appellant's older phone, which he disposed of shortly after his Kik account was deactivated and when he was presumably aware that his conduct had been discovered, does not defeat the convictions. *See*, *e.g.*, *Commonwealth v. Brockington*, 230 A.3d 1209, 1212 (Pa.Super. 2020) ("The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." (citation omitted)). In my view, it is also irrelevant that Appellant did not create a new Kik account or download different software that could potentially facilitate the transfer of CSAM after he traded in his phone. The charges in this case related to his activity during November and December of 2021, not the time Trooper Ballentyne executed the search warrant several months later.

Furthermore, evidence of Appellant possessing CSAM with the purpose of dissemination could be fairly inferred from the fact that Appellant, on multiple occasions, sent certain such files to himself. In its closing, the Commonwealth provided an analogy for the jury to consider in weighing whether Appellant intended to transfer the CSAM. The prosecutor indicated

that the explicit materials were collected from others and sometimes traded in return, somewhat like trading cards. Springing from the trooper's testimony, she argued that Appellant likely sent certain images and videos to himself on Kik as a way of organizing them for future exchanges with others. *See* N.T. Trial, 5/5/23, at 21-25. While the Commonwealth's closing argument was, of course, not evidence, it nevertheless highlighted reasonable inferences that the jury was permitted to glean from the testimony provided by Trooper Ballentyne. Accordingly, in viewing the evidence in the light most favorable to the Commonwealth, I believe that evidence was sufficient to establish that Appellant possessed the files referenced in counts 3, 5, 6, 8, 10, 11, and 13 with the purpose of distributing them.

Having concluded that the Commonwealth met its burden with respect to the above charges, I next consider his claim that the court erroneously graded certain offenses based on the fact that they depicted CSAM of prepubescent persons. The Majority cogently concludes that the evidence was adequate based upon a combination of the testimony of Trooper Ballentyne, the trial court's accurate instructions to the jury as to determining prepubescence, the fact that the jurors expressly viewed and considered the photos and videos in question, and the caselaw standing for the proposition that prepubescence can be determined by the factfinder without expert testimony. *See* Majority Memorandum at 18-21.

However, based on its disposition, the Majority explicitly did not consider Appellant's challenge as it relates to counts 10 or 11, having previously

concluded that said counts should be vacated. Upon review, I would find that the Majority's rationale applies with equal force to these two convictions, and that the jury was therefore within its rights to conclude that the CSAM associated with those charges showed prepubescent children.

In contrast, my esteemed colleagues grant relief to Appellant on his next claim, wherein he attacks the grading of his sentence as to counts 4, 6, 7, 8, 9, 11, 12, 13, 14, and 16. The Majority correctly concludes, *inter alia*, that we must remand for resentencing because the jury had no basis in which to determine whether indecent contact was present in the CSAM since the trial court failed to provide the legal definition of that term in its closing instruction. **See** Majority Memorandum at 23-24. This position, which I fully endorse, necessarily requires that we remand for resentencing since the scheme set forth by the trial court has been upset.[1]

In conclusion, I concur that a remand for resentencing is necessary on counts 4, 6, 7, 8, 9, 11, 12, 13, 14, and 16, but I would uphold all of Appellant's convictions.

---

[1] Based on this, like my learned colleagues, I would not address Appellant's final two claims on appeal, which challenge the discretionary aspects of his sentence.